## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GOLO, LLC,<br><br>                 Plaintiff,<br>v.<br><br>ZOCO PRODUCTIONS, LLC; HARPO<br>PRODUCTIONS, INC.; MEHMET OZ,<br>M.D.; and KERI GLASSMAN,<br><br>                 Defendants. | CIVIL ACTION NO. 2:17-cv-03407 |

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS ZOCO PRODUCTIONS, LLC, MEHMET OZ, M.D., AND HARPO PRODUCTIONS, INC. TO PLAINTIFF'S ORIGINAL COMPLAINT

Defendants ZoCo Productions, LLC ("ZoCo") and Mehmet Oz, M.D. ("Dr. Oz") (collectively, "ZoCo Defendants") and Harpo Productions, Inc. ("Harpo") (collectively, "Defendants") submit this Answer and Affirmative Defenses ("Answer") to Plaintiff's Complaint ("Complaint," Doc. 1) and would respectfully show as follows:

1.      This Court has jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and under the Lanham Act, 15 U.S.C. § 1121, *et seq*.

**ANSWER:**   Defendants admit that this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1338.  Defendants also admit that Plaintiff's claims are based on the Lanham Act.  Defendants deny the remaining allegations contained in paragraph 1 of the Complaint.

2.      This Court has personal jurisdiction over Harpo and ZoCo because each transacts business and/or causes harm and tortious injury in the Commonwealth of Pennsylvania. More specifically, Harpo and ZoCo co-produce a syndicated television show - *The Dr. Oz Show* - which is broadcast across the United States, including in Pennsylvania.

**ANSWER**:   Defendants admit that ZoCo produces *The Dr. Oz Show*, that the show is a syndicated television show, that the show is broadcast in certain locations in the U.S., and that the show is broadcast in certain locations in Pennsylvania.   Defendants deny the remaining allegations contained in paragraph 2 of the Complaint.   Defendants deny that the Complaint alleges any conduct or harm that occurred in Pennsylvania.

3.   This Court has personal jurisdiction over Dr. Oz and Ms. Glassman because each transacts business, contracts to supply things, and/or causes harm and tortious injury in the Commonwealth of Pennsylvania. More specifically, Dr. Oz and Ms. Glassman appear on the above-referenced syndicated television show; and sell and/or promote diet and health-related products and programs in or to residents of Pennsylvania.

**ANSWER**:   Defendants admit that Dr. Oz appears on *The Dr. Oz Show*, and that the show is a syndicated television show.   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations concerning Ms. Glassman contained in paragraph 3 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.   Defendants deny the remaining allegations contained in paragraph 3 of the Complaint.   Defendants deny that the Complaint alleges any conduct or harm that occurred in Pennsylvania.

4.   Defendants have purposefully availed themselves of the laws of Pennsylvania and engage in continuous and systematic conduct in Pennsylvania and this judicial district.

**ANSWER**:   Defendants deny the allegations contained in paragraph 4 of the Complaint.

5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

**ANSWER**:   Defendants deny the allegations contained in paragraph 5 of the Complaint.

6.      GOLO is a corporation organized under the laws of the State of Delaware with a principal place of business located at 630 Churchmans Road, Suite 200, Newark, Delaware 19702.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 6 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

7.      ZoCo is Delaware limited liability company with a principal place of business located at 1270 Avenue of the Americas, New York, New York 10020.

**ANSWER:**    Defendants admit ZoCo is a Delaware limited liability company with a principal place of business located at 1270 Avenue of the Americas, New York, New York.  Defendants deny the remaining allegations contained in paragraph 7 of the Complaint.

8.      Harpo is an Illinois corporation with a principal place of business located at 110 North Carpenter Street, Chicago, IL 60607.

**ANSWER:**    Defendants admit that Harpo is an Illinois corporation.  Defendants deny the remaining allegations contained in paragraph 8 of the Complaint.

9.      Dr. Oz is an individual who resides in Cliffside Park, New Jersey.

**ANSWER:**    Defendants admit the allegations contained in paragraph 9 of the Complaint.

10.     Ms. Glassman is an individual who resides in New York, New York.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 10 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

11.     GOLO owns and sells GOLO™, a leading weight loss and wellness program that aids people all over the world in achieving their weight loss goals in a sustainable and healthy manner. (*See* www.golo.com.)

**ANSWER:**     Defendants admit that GOLO purports to sell a weight loss and wellness program. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 11 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

12.     GOLO is the owner of a series of registered trademarks that include the term "GOLO" and relate to the GOLO program.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 12 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

13.     GOLO was the top-searched diet on Google in 2016. (*See* https://www.google.com/trends/yis/2016/US?hl=en.)

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 13 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

14.     The GOLO Rescue Plan program promotes weight loss with a three-tier solution of dietary modification, lifestyle change that recommends regular exercise, and nutraceutical supplementation that helps dieters lose weight without excessively cutting calories and/or compromising their health.

**ANSWER:**     Defendants admit the GOLO Rescue Plan program purports to promote weight loss with a three-tier solution of dietary modification, purports to promote lifestyle change that

recommends regular exercise, and sells nutraceutical supplementation that purports to help dieters lose weight without excessively cutting calories and/or compromising their health. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 14 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

15.     The GOLO program includes: (1) the Release® supplement; (2) the Metabolic Fuel Matrix™; and (3) the Truth and Change™ booklet and other behavioral tools. (Id.) GOLO is designed to promote steady weight loss; while individual results may vary, GOLO customers can expect to lose an average of 1-2 pounds per week, which has long been regarded as a healthy and sustainable weight loss goal to minimize muscle loss.

**ANSWER:**     Defendants admit the GOLO program includes: (1) pills called "Release"; (2) a "matrix" called the "Metabolic Fuel Matrix"; and (3) a booklet called the "Truth and Change booklet."  Defendants also admit the GOLO program purports to include other "behavioral tools."  Defendants also admit that GOLO claims: it is designed to promote steady weight loss; while individual results may vary, GOLO customers can expect to lose an average of 1-2 pounds per week, which GOLO contends has long been regarded as a healthy and sustainable weight loss goal to minimize muscle loss.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 15 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

16.     The Release supplement contains a proprietary blend of ingredients that work in conjunction with the Metabolic Fuel Matrix to help manage glucose, insulin, and stress, in order to promote steady and sustainable weight loss and minimize or eliminate muscle loss during the weight loss regimen.

**ANSWER:**    Defendants admit GOLO says that the pills called "Release" contain a proprietary blend of ingredients that work in conjunction with the Metabolic Fuel Matrix to help manage glucose, insulin, and stress, in order to promote steady and sustainable weight loss and minimize or eliminate muscle loss during the weight loss regimen.   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 16 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

17.    The Metabolic Fuel Matrix employs a meal plan that utilizes a Fuel Index system created by GOLO that is designed to estimate the right amount of food for a customer based on the customer's gender, age, BMI, and lifestyle activity before exercise. The meal plan is based on sound, balanced meals and snacks. A GOLO customer's typical daily intake ranges from 1300-1500 calories, before exercise, which is a higher amount than conventional diets or self-dieting strategies that usually keep the dieter's intake below 1200 calories per day. GOLO also promotes additional caloric intake when customers complete daily exercise, in order to prevent customers from creating an excessive caloric deficit state or exercise induced muscle loss.

**ANSWER:**    Defendants admit GOLO says that the "matrix" that GOLO calls the "Metabolic Fuel Matrix" purports to utilize a system called the "Fuel Index system" that GOLO claims to have created, and that GOLO claims is "designed to estimate the right amount of food for a customer based on the customer's gender, age, BMI, and lifestyle activity before exercise." Defendants admit GOLO claims "the meal plan is based on sound, balanced meals and snacks." Defendants admit GOLO claims that a "GOLO customer's typical daily intake ranges from 1300-1500 calories, before exercise, which is a higher amount than conventional diets or self-dieting strategies that usually keep the dieter's intake below 1200 calories per day." Defendants admit GOLO claims it "also promotes additional caloric intake when customers complete daily

exercise, in order to prevent customers from creating an excessive caloric deficit state or exercise induced muscle loss."  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 17 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

18.     GOLO® promotes lifestyle behavioral change by providing users with several tools to help adjust their eating habits, address stress and emotional eating, shop healthier, and exercise more.

**ANSWER:**     Defendants admit GOLO claims it "promotes lifestyle behavioral change by providing users with several tools to help adjust their eating habits, address stress and emotional eating, shop healthier, and exercise more."  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 18 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

19.     The GOLO Rescue Plan Kit currently includes: the GOLO Quick Start Guide; Rescue Plan™; Creating Matrix Meals™; Truth & Change™; the Release supplement; and a free myGOLO.com membership.  Members can choose additional Release bottles at the time of order or later via the myGOLO™ free membership site. Customers do not pay for shipping for their Rescue Plan Kit.

**ANSWER:**     Defendants admit GOLO claims that "[t]he GOLO Rescue Plan Kit currently includes: the GOLO Quick Start Guide; Rescue Plan™; Creating Matrix Meals™; Truth & Change™; the Release supplement; and a free myGOLO.com membership."  Defendants admit GOLO claims that "[m]embers can choose additional Release bottles at the time of order or later via the myGOLO™ free membership site."  Defendants admit GOLO claims "[c]ustomers do not pay for shipping for their Rescue Plan Kit."  Defendants lack knowledge or information

sufficient to form a belief about the truth of the allegations contained in paragraph 19 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

20.    The myGOLO.com membership provides a support forum and allows members to communicate with other members following GOLO, as well as access recipes and meal plans.

**ANSWER:**    Defendants admit GOLO claims that the "myGOLO.com membership provides a support forum and allows members to communicate with other members following GOLO, as well as access recipes and meal plans."  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 20 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

21.    GOLO offers a 60-day money back guarantee to its members, from the time they receive the product.

**ANSWER:**    Defendants admit GOLO claims to offer a "60-day money back guarantee to its members, from the time they receive the product."  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 21 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

22.    GOLO has earned rave reviews from its members, many of whom credit GOLO with being the catalyst for sustainable weight loss, long-lasting dietary changes, and overall improved health. (*See* https://golo.com (providing numerous member reviews of GOLO).) GOLO states on its website that the highlighted results may not be typical and each person's results may vary. (*Id.*)

**ANSWER:**    Defendants admit that GOLO claims: "GOLO has earned rave reviews from its members, many of whom credit GOLO with being the catalyst for sustainable weight loss, long-lasting dietary changes, and overall improved health." Defendants also admit that GOLO further

claims it states on its website that the weight loss results discussed on the website "may not be typical and each person's results may vary." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 22 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

23.     GOLO is endorsed, and even used by, multiple doctors, many of whom share their professional opinions of GOLO on GOLO's website. (*See id*.)

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

24.     GOLO's website identifies the "GOLO Developers" and "Customer Support Team," and outlines their mission: "to empower others to become better informed, more self-reliant and motivated to take control of their weight and adopt a healthy lifestyle that will help them achieve a better quality of life." (https://www.golo.com/how-golo-works-s.)

**ANSWER:**     Defendants admit that GOLO claims: its "website identifies the "GOLO Developers" and "Customer Support Team," and outlines their mission: "to empower others to become better informed, more self-reliant and motivated to take control of their weight and adopt a healthy lifestyle that will help them achieve a better quality of life." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 24 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

25.     GOLO conducted several trials between 2009 and 2014 in South Africa and the United States to determine the efficacy and safety of its three-tier solution. (*See id*.) These studies demonstrated average weight loss of 20.6 pounds within the first 90 days of the program, 37.4 pounds after 26 weeks, and 48.6 pounds after one year. (*See id*.)

**ANSWER**:   Defendants admit GOLO claims to have conducted several trials between 2009 and 2014 in South Africa and the United States to determine the efficacy and safety of its three-tier solution.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 25 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

26.   GOLO's products are sold exclusively through its website and customer service department; GOLO does not have traditional, brick-and-mortar stores, and it does not process orders by phone through a third-party call center.

**ANSWER**:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 26 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

27.   GOLO keeps careful track of the amount of web traffic its website receives; among other things, GOLO records and analyzes the number of unique visitors to its website, the amount of organic internet traffic its website receives (i.e., the number of visitors who arrive at the website by searching for the term "GOLO" on Google, Bing, or Yahoo, and not simply by typing GOLO's url address into their browser), and the percentage of visitors who "click through" and purchase GOLO's products and/or services from the website.

**ANSWER**:   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 27 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

28.   GOLO drives traffic to its website through television, radio, print, and digital marketing.

**ANSWER**:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 28 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

29.    While the numbers vary by season, GOLO's website receives an average of roughly 300,000 visitors per month. Of those visitors: approximately thirty percent (30%) have arrived organically (i.e., through a web search); and roughly four percent (4%) purchased one or more of GOLO's products, spending an average of $75.00.

**ANSWER**:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 29 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

30.    As reflected above, every visitor to GOLO's website (a "hit" or "click") represents real monetary value to GOLO.

**ANSWER**:    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 30 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

31.    Dr. Oz is a medical doctor, professor, author, entrepreneur, and - most famously - television personality.

**ANSWER**:    Defendants admit that Dr. Oz is a medical doctor, professor, author, entrepreneur, and television personality.  Defendants deny the remaining allegations contained in paragraph 31 of the Complaint.

32.    From roughly 2004 to 2009, Dr. Oz was a frequent guest on Harpo's *The Oprah Winfrey Show*.

**ANSWER:** Defendants admit that in 2004 to 2009 Dr. Oz was a guest on the Oprah Winfrey Show which was, at that time, produced by Harpo. Otherwise the Defendants deny the allegation in Paragraph 32.

33. In 2009, Harpo and ZoCo launched the *Dr. Oz Show*, a daily, syndicated television program hosted by Dr. Oz, and, on information and belief, co-produced by Harpo and ZoCo.

**ANSWER:** Defendants admit that ZoCo produces the *Dr. Oz Show*, a daily, syndicated television program hosted by Dr. Oz. Defendants deny the remaining allegations contained in paragraph 33 of the Complaint.

34. The Dr. Oz Show is a one-hour "informative talk show" devoted to medical issues, personal health, and related topics.

**ANSWER:** Defendants admit *The Dr. Oz Show* is a one-hour daily TV program, that the show has won Emmy Awards for "Outstanding Informative Talk Show," and that the show is focused on medical issues and personal health. Defendants deny the remaining allegations contained in paragraph 34 of the Complaint.

35. *The Dr. Oz Show* is watched regularly by millions of Americans and distributed worldwide to 118 countries, and has won multiple Emmy awards for "Outstanding Informative Talk Show."

**ANSWER:** Defendants admit *The Dr. Oz Show* is watched by a million or more viewers and has won multiple Emmy awards for "Outstanding Informative Talk Show." Defendants deny the remaining allegations contained in paragraph 35 of the Complaint.

36.     *The Dr. Oz Show* is sponsored by a series of "trusted partners"; among these are several diet and health-related companies that compete with GOLO, including Aquaphor, Eucerin, and Omron. (*See* Ex. A, hereto.)

**ANSWER:**     Defendants admit that ZoCo has referred to Aquaphor, Eucerin, and Omron as "trusted sponsorship partners" and that they advertise from time to time on *The Dr. Oz Show*. Defendants deny the remaining allegations contained in paragraph 36 of the Complaint.

37.     Ms. Glassman is a nutritionist who regularly appears on and contributes to *The Dr. Oz Show*.

**ANSWER:**     Defendants admit Ms. Glassman is a nutritionist who has appeared on and contributes to *The Dr. Oz Show*.  Defendants deny the remaining allegations contained in paragraph 37 of the Complaint.

38.     During Ms. Glassman's appearances, Dr. Oz often refers to and describes Ms. Glassman as an "expert," a "specialist," and a "guru"; Ms. Glassman discusses various health and/or nutrition related topics; and Ms. Glassman provides reviews or analyses of - among other things - diets and weight-loss programs.

**ANSWER:**     Defendants admit Dr. Oz has referred to Ms. Glassman as an "expert" on *The Dr. Oz Show*.  Defendants admit Ms. Glassman has provided reviews or analyses of – among other things – diets and weight-loss programs on *The Dr. Oz Show*.  Defendants deny the remaining allegations contained in paragraph 38 of the Complaint.

39.     Dr. Oz and Ms. Glassman are direct competitors of GOLO who are each involved in a variety of diet and health-related enterprises beyond and related to *The Dr. Oz Show*.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations pertaining to Ms. Glassman contained in paragraph 39 of the Complaint,

and they are, pursuant to Fed. R. Civ. P. 8, denied. Defendants deny the remaining allegations contained in paragraph 39 of the Complaint.

40.      For example, Dr. Oz owns, invests in, and/or operates OzNaturals, a manufacturer of skin care products that claims to sell "top-of-the-line natural skin care products by using the best natural ingredients available."

**ANSWER:**   Defendants deny the allegations contained in paragraph 40 of the Complaint.

41.      Dr. Oz also sells, promotes, and/or has financial connections to: Dr. Teal's bath and body products; No7 "anti-aging" products; USANA supplements; and multiple other diet and health-related products.

**ANSWER:**   Defendants deny the allegations contained in paragraph 41 of the Complaint.

42.      Dr. Oz is the author or co-author of multiple books and health guides, including: *Food Can Fix It: The Superfood Switch to Fight Fat, Defy Aging, and Eat Your Way Healthy; You: Staying Young - The Owner's Manual for Looking Good and Feeling Good; You: On a Diet - The Owner's Manual for Waist Management*; and *You: The Owner's Manual*.

**ANSWER:**   Defendants admit the allegations contained in paragraph 42 of the Complaint.

43.      Dr. Oz has his own magazine (*The Good Life*), a regular column in Oprah's magazine (*O*), and a blog (blog.doctoroz.com), all of which frequently devote significant space to weight loss and diet-related topics.

**ANSWER:**   Defendants admit Dr. Oz has his own magazine (*The Good Life*), a regular column in Oprah's magazine (*O*), and a blog (blog.doctoroz.com), and they sometimes devote space to weight loss and diet-related products.  Defendants deny the remaining allegations contained in paragraph 43 of the Complaint.

44.     Dr. Oz also has a website (http://www.doctoroz.com ("the Dr. Oz website")), which is registered to Harpo, operated by ZoCo, and used to post clips from *The Dr. Oz Show*, publish various articles, and provide links to Dr. Oz's blog promoted products, and books.

**ANSWER:**   Defendants admit Dr. Oz also has a website (http://www.doctoroz.com ("the Dr. Oz website")), used to post clips from *The Dr. Oz Show*, publish various articles, and provide links to Dr. Oz's blog, and books.  Defendants deny the remaining allegations contained in paragraph 44 of the Complaint.

45.     Dr. Oz also maintains a Facebook page, a Twitter account, a YouTube channel, a Google+ profile, and multiple other social media accounts, which he regularly uses to promote *The Dr. Oz Show* and his other diet and health-related enterprises, and to sell his health- and diet-related products.

**ANSWER:**   Defendants admit Dr. Oz also maintains a Facebook page, a Twitter account, a YouTube channel, a Google+ profile, and multiple other social media accounts.  Defendants deny the remaining allegations contained in paragraph 45 of the Complaint.

46.     For her part, Ms. Glassman is the author of at least four books which promote diet plans that differ from and compete with GOLO: *The New You and Improved Diet; Slim Calm Sexy Diet; The O2 Diet;* and *The Snack Factor Diet*.

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 46 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

47.     Ms. Glassman is also the president of Nutritious Life, a health and wellness brand, and The Nutrition School, which her website describes as "a 12-week online course created to

provide an unprecedented nutrition education and a springboard for building and nurturing a successful career in health and wellness." (Ex. B, hereto.)

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 47 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

48.    Ms. Glassman also sells, promotes, and/or receives compensation from supplements manufactured and distributed by Life's Abundance. According to her website, Ms. Glassman "helped choose very single ingredient that went into these supplements," which are "intended to be incorporated into [a consumer's] diet and ... life to support ... overall health, not just for 30 days, but for a lifetime." (Ex. C, hereto.)

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 48 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

49.    On information and belief, neither Dr. Oz nor Ms. Glassman disclose the above-described, competing enterprises to viewers of *The Dr. Oz Show* or visitors to the Dr. Oz website, or otherwise inform such viewers or visitors that they compete with the diet and health-plans they "review" and discuss on *The Dr. Oz Show* and the Dr. Oz website.

**ANSWER:**    Defendants deny the allegations concerning Dr. Oz contained in paragraph 49 of the Complaint.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations concerning Ms. Glassman contained in paragraph 49 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

50.    As a result, viewers of *The Dr. Oz Show* and visitors to the Dr. Oz website typically believe and/or assume that Dr. Oz and Ms. Glassman are independent and unbiased,

and that their analyses and reviews of diet and health-related products and programs are objective, scientific, and authoritative.

**ANSWER:**     Defendants deny the allegations contained in paragraph 50 of the Complaint.

51.     Moreover, Dr. Oz and Ms. Glassman regularly use *The Dr. Oz Show* and the Dr. Oz website to provide more favorable, but equally illegitimate or unfounded, reviews of their own or affiliated diet and health-related products and plans.

**ANSWER:**     Defendants deny the allegations contained in paragraph 51 of the Complaint.

52.     For example, Dr. Oz devotes significant space on his website to his "21 Day Weight-Loss Breakthrough," a competing diet plan the Dr. Oz website claims will allow dieters to "reach [their] health goals" and help "lose weight, reduce bloat, and boost ... energy - all within three weeks!" (Ex. D, hereto.) Yet, there are no clinical studies, research, or scientific analyses of that competing diet plan provided on the Dr. Oz website.

**ANSWER:**     Defendants admit there is a portion of www.doctoroz.com that describes the "21 Day Weight-Loss Breakthrough."  Defendants admit that The 21-Day Weight Loss Breakthrough Diet: Print the Plan can be located at http://www.doctoroz.com/page/21-day-weight-loss-breakthrough-diet-print-plan.  Defendants also admit that at that web page it states, in part: "Following a plant-based diet can help you lose weight, reduce bloat, and boost your energy — all in three weeks! You don't even have to eat the same old boring salad day in and day out. The 21-Day Weight Loss Breakthrough Diet centers around three meals, two snacks, and unlimited vegetables every day, giving you the opportunity to enjoy real and healthy foods without counting calories or relying on prepackaged shakes or supplements. Get started on your weight-loss journey and print out the full plan for The 21-Day Weight Loss Breakthrough Diet." Defendants deny the remaining allegations contained in paragraph 52 of the Complaint.

53.    Despite his medical credentials and *The Dr. Oz Show*'s popularity and awards, Dr. Oz has - on multiple occasions - been investigated, reprimanded, and sued for making false, misleading, or scientifically dubious claims on *The Dr. Oz Show* and in connection with his other diet and health-related enterprises.

**ANSWER:**    Defendants deny that Dr. Oz has been "investigated" or "reprimanded." Defendants admit that Dr. Oz has been sued based on claims related to *The Dr. Oz Show*. Defendants deny the remaining allegations contained in paragraph 53 of the Complaint.

54.    In 2011, the United States Food and Drug Administration sent two letters to *The Dr. Oz Show*, scolding its producers for making unsubstantiated and apparently erroneous claims about the safety of apple juice. (*See* https://www.fda.gov/food/resourcesforyou/consumers/ucm271746.htm.)

**ANSWER:**    Defendants admit that in 2011, the United States Food and Drug Administration sent two letters to *The Dr. Oz Show*, that the letters pertained to the safety of apple juice, and that links to the two letters can be found at https://www.fda.gov/food/resourcesforyou/consumers/ucm271746.htm. Defendants deny the remaining allegations contained in paragraph 54 of the Complaint.

55.    In 2014, a panel of United States Senators criticized Dr. Oz during a hearing on consumer protection, chastising him for discussing and supporting "magic weight-loss cure[s]" on *The Dr. Oz Show* that the larger "scientific community … almost monolithic[ally]" rejects. (*See* http://www.huffingtonpost.com/2014/06/17/dr-oz-congress_n_5504209.html.)

**ANSWER:**    Defendants admit that in 2014 certain United States Senators made statements about Dr. Oz during a hearing on consumer protection. Defendants deny the remaining allegations contained in paragraph 55 of the Complaint.

56.     In 2015, a group of medical doctors publicly criticized Dr. Oz for promoting "quack treatments" and called for Columbia University to revoke his professorship and terminate his employment.   (*See*   https://apnews.com/d7737df9c53d407cbcbb279155ac9a7c/physicians-want-dr-oz-gone-columbia-medical-faculty.)

**ANSWER:**     Defendants admit that in 2015 a group of medical doctors made public statements about Dr. Oz and called for Columbia University to revoke his professorship and terminate his employment.   Defendants deny the remaining allegations contained in paragraph 56 of the Complaint.

57.     And, in early 2016, a class action lawsuit was filed against Dr. Oz in the Central District of California, in which the lead plaintiff alleged that Dr. Oz falsely promoted a supplement containing Garcinia Cambogia as a "magic weight loss cure." (*See Woodard v. Labrada, et al.*, No. 2:16-cv-00717 (C.D. Cal.).)

**ANSWER:**     Defendants admit that such a lawsuit was filed and such allegations were made. By way of further answer, the ZoCo Defendants deny the allegations made in that lawsuit and incorporate by reference their Answer to the Complaint filed in that lawsuit.

58.     In fact, an assessment of Dr. Oz's claims in the British Medical Journal found that - during the course of 40 episodes of *The Dr. Oz Show* from 2013 - only 46% of Dr. Oz's recommendations from those episodes were supported by medical research, and 15% of those recommendations were contradicted by medical research.   (*See* http://www.bmj.com/content/349/bmj.g7346.)

**ANSWER:**     Defendants admit they are aware of the British Medical Journal article identified in paragraph 58 of the Complaint, and Defendants refer to that article as the best evidence of what the authors claim.   Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegations contained in paragraph 58 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

59.     On or around July 11, 2017, Harpo and ZoCo published a short "review" of GOLO's product and service to the Dr. Oz website, as part of a larger "slideshow" entitled *The Real Truth About 5 Trendy Internet Diets*, which purports to distinguish successful programs from "passing fad[s]." A true and correct copy of that written GOLO® "review" (the "Written Review") - as pulled from http://www.doctoroz.com/gallery/real-truth-about-5-trendy-intenet-diets?gallery_true=&page=2_ on July 28, 2017 - is attached hereto as Exhibit E.

**ANSWER:**     ZoCo Defendants admit that a review of GOLO's product and service was published on www.doctoroz.com.  ZoCo Defendants admit that that review was part of a larger "slideshow" entitled *The Real Truth About 5 Trendy Internet Diets*.  ZoCo Defendants admit the last sentence of paragraph 59 of the Complaint.   ZoCo Defendants deny the remaining allegations contained in paragraph 59 of the Complaint.  Harpo lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 58 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

60.     Despite its brevity, the Written Review, which did not disclose Defendants' conflicts of interest, includes a link to Dr. Oz's competing "21-Day Weight Loss" program, and was apparently crafted with Ms. Glassman's "help" (*see* Ex. E at 1), is replete with inaccuracies, misleading statements, and blatant falsehoods.

**ANSWER:**     Defendants deny the allegations contained in paragraph 60 of the Complaint.

61.     For example, the Written Review falsely states that GOLO customers: "pay $50 a month"; "receive various supplements"; and typically eat "oatmeal, apples, a handful of nuts, salmon, vegetables, Greek yogurt, and veggie soup." (*Id*. at 7.)

**ANSWER:**    Defendants admit the "Written Review" contains the words "pay $50 a month"; "receive various supplements"; and "typical day on the diet includes oatmeal, apples, a handful of nuts, salmon, vegetables, Greek yogurt, and veggie soup."  Defendants deny the allegations contained in paragraph 61 of the Complaint.

62.    In actuality and as demonstrated above in Paragraphs 14-25, GOLO: does not automatically bill or ship products to its customers (thus, there is no "per month" payment); only includes one supplement (Release, a patented nutraceutical), not a "variety"; and offers a flexible meal plan through the Metabolic Fuel Matrix, which allows customers to choose the foods they want from a variety of food groups, and add additional calories as needed (it does not require the customer to stick to the meager example described in the Written Review).

**ANSWER:**    Defendants incorporate by reference their responses to Paragraphs 14-25. By way of further answer, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 62 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

63.    The Written Review also falsely claims the "way [GOLO's] information is presented is confusing" and states: "[i]f you are not a fan of taking supplements regularly, [GOLO] may not be the diet for you." (*Id.*)

**ANSWER:**    Defendants admit the "Written Review" states, in part, "Glassman found that the diet is pretty basic in terms of balancing protein, healthy carbohydrates, and vegetables, but the way the information is presented is confusing.  If you are not a fan of taking supplements regularly, this may not be the diet for you."  Defendants deny the allegations contained in paragraph 63 of the Complaint.

64.     Again, in actuality and as demonstrated above in Paragraphs 14-25, GOLO provides customers with simple, straightforward instructions and extensive details regarding GOLO, and customers do not have to take more than one supplement per day.

**ANSWER:**     Defendants incorporate by reference their responses to Paragraphs 14-25. By way of further answer, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 64 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.

65.     On July 12, 2017, Harpo and ZoCo broadcast a segment on *The Dr. Oz Show* which purported to provide a review of the GOLO program (the "TV Review"). A transcript of that segment is attached hereto as Exhibit F, and a clip of that segment is presently available online at http://www.doctoroz.com/episode/truth-about-latest-internet-diets-what-works?video_id=5494722643001.

**ANSWER:**     Defendants admit that on July 12, 2017, a segment was broadcast on *The Dr. Oz Show* that provided a review of the GOLO program.  Defendants deny that Exhibit F is a complete and accurate transcript of the segment.  Defendants admit the segment was located at http://www.doctoroz.com/episode/truth-about-latest-internet-diets-what-works?video_id=5494722643001.   Defendants deny the remaining allegations contained in paragraph 65 of the Complaint.

66.     As with the Written Review posted to Dr. Oz's website, the TV Review contained numerous false and misleading statements, and did not disclose Defendants' conflicts of interest.

**ANSWER:**     Defendants deny the allegations contained in paragraph 66 of the Complaint.

67.     During the TV Review, Dr. Oz and Ms. Glassman stood behind GOLO manuals (that were turned around, with their backs facing the studio and television audience) and a bottle

of Release, made a series of misleading, inaccurate, and blatantly false statements regarding GOLO, and asked a woman ("Celeste"), who supposedly sampled GOLO for one week, about her experience with and opinion of GOLO.

**ANSWER:**     Defendants admit that during the TV Review, Dr. Oz and Ms. Glassman each stood behind a GOLO manual (one that included the words "Creating Matrix Meals … GOLO" and the other that included the words "GOLO 30 Day Rescue Plan … GOLO") and a bottle with the word Release on it.  Defendants admit that on the TV Review, Dr. Oz asked a woman ("Celeste"), who said she was on her sixth day on the diet about her experience with and opinion of GOLO.  Defendants deny the allegations contained in paragraph 67 of the Complaint.

68.     On information and belief, "Celeste" (whose last name was not disclosed to viewers during the TV Review) is employed, or otherwise financially compensated, by ZoCo and/or Harpo.

**ANSWER:**     Defendants deny the allegations contained in paragraph 68 of the Complaint.

69.     Though framed as an informative, helpful segment for viewers, the TV Review was, in fact, a charade designed to negatively affect GOLO, dissuade viewers from purchasing GOLO, and unfairly benefit Defendants' competing products.

**ANSWER:**     Defendants deny the allegations contained in paragraph 69 of the Complaint.

70.     For example, Ms. Glassman stated during the TV Review both that GOLO customers pay $50 "for the month" and $50 "a day"; both statements are false. GOLO's initial purchase price is $49.95, and that price includes a bottle of Release that can last customers up to 90 days; GOLO does not automatically renew, bill, or ship products to its customers.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in last sentence of paragraph 70 of the Complaint, and they are,

pursuant to Fed. R. Civ. P. 8, denied.  Defendants deny the remaining allegations contained in paragraph 70 of the Complaint.

71.     In addition, the TV Review falsely implied that GOLO markets Release as a "miracle pill"; GOLO has never made any such claim.

**ANSWER:**     Defendants deny the allegations contained in paragraph 71 of the Complaint.

72.     The TV Review also falsely stated that the "research done on [GOLO] is also, of course, not surprisingly, done by the company itself." While GOLO financed some of the studies referenced on its website, several GOLO studies were conducted overseas by independent, third parties. There are also over 100 independent, third-party studies of the safety and efficacy of the key active ingredients in the Release supplement.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second sentence of paragraph 72 of the Complaint, and they are, pursuant to Fed. R. Civ. P. 8, denied.  Defendants deny the remaining allegations contained in paragraph 72 of the Complaint.

73.     The TV Review also mischaracterized the GOLO meal plan through a disingenuous demonstration with "Celeste," after which Ms. Glassman summarized "Celeste's" daily food intake as a "fairly healthy diet" that is "a little low in calories, um a little, maybe a little low in protein, perhaps a little low in fat, but it's a fairly healthy plan." The demonstration was in no way reflective of the actual GOLO meal plan, as more fully described in Paragraph 17, above.

**ANSWER:**     Defendants deny the allegations contained in paragraph 73 of the Complaint.

74.     At the segment's conclusion, "Celeste" - who claimed to have tried GOLO for six days - stated that GOLO was a "no no" for her; and neither Dr. Oz nor Ms. Glassman qualified

or couched "Celeste's" limited experience in any way. Instead, the segment encouraged skepticism of GOLO, and dissuaded viewers from purchasing GOLO.

**ANSWER:**    Defendants admit that Celeste said, among other things, something to the effect of "For Celeste.   No-no for GOLO."   Defendants deny the remaining allegations contained in paragraph 74 of the Complaint.

75.    None of the Defendants contacted GOLO, requested information from GOLO, or submitted questions to GOLO, in advance of publishing the Written Review, or airing the TV Review.

**ANSWER:**    Defendants deny the allegations contained in paragraph 75 of the Complaint.

76.    On information and belief, none of the Defendants used, tested, studied, analyzed, or read published reports regarding GOLO in advance of publishing either the Written Review or the TV Review.

**ANSWER:**    Defendants deny the allegations contained in paragraph 76 of the Complaint.

77.    On information and belief, "Celeste" did not properly follow the GOLO plan, and her story appears to have been fabricated and designed solely to dissuade viewers from purchasing GOLO.

**ANSWER:**    Defendants deny the allegations contained in paragraph 77 of the Complaint.

78.    As noted above, *The Dr. Oz Show* is a highly popular daily talk show; according to published Nielsen ratings, roughly 1.1 million Americans watch *The Dr. Oz Show* each day.

**ANSWER:**    Defendants admit The Dr. Oz Show is a talk show broadcast five days a week and that it is popular.   Defendants further admit that on some days Nielsen rating have shown The Dr. Oz Show was seen by 1.1 million viewers in the U.S. market.   Defendants deny the remaining allegations contained in paragraph 78 of the Complaint.

79.     On information and belief, Harpo, ZoCo, and Dr. Oz make the majority of their revenue from *The Dr. Oz Show* through television advertisement sales, the price of which is largely determined by the above-referenced Nielsen ratings, and other indicia of *The Dr. Oz Show's* viewership.

**ANSWER:**     Defendants deny the allegations contained in paragraph 79 of the Complaint.

80.     On information and belief, a disproportionate number of advertisements on *The Dr. Oz Show* are paid for by pharmaceutical, medical, diet, and/or health-related companies and products, many of which compete with GOLO.

**ANSWER:**     Defendants deny the allegations contained in paragraph 80 of the Complaint.

81.     On information and belief, *The Dr. Oz Show*'s viewership spikes when the show focuses on diet programs, particularly new and/or alternative diet programs that make bold claims regarding their effectiveness and safety.

**ANSWER:**     Defendants deny the allegations contained in paragraph 81 of the Complaint.

82.     On information and belief, Defendants have an incentive to depict, and do benefit from depicting, GOLO negatively; such negative depictions increase viewership, generate additional advertisement revenue, satisfy *The Dr. Oz Show*'s sponsors that compete with GOLO, and make the products and programs Defendants sell, contribute to, invest in, or promote, look comparatively better.

**ANSWER:**     Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.     On information and belief, Defendants work or have worked together to redirect GOLO's potential and existing customers to the Dr. Oz website through various search engine optimization techniques ("SEOs"), including the use of Google's AdSense and/or AdWords programs, or similar Bing and/or Yahoo programs.

**ANSWER:**     Defendants deny the allegations contained in paragraph 83 of the Complaint.

84.     On information and belief, Defendants purchase online advertisements through Google's AdSense and/or AdWords programs, or similar Bing and/or Yahoo programs, including advertisements that are based upon, or incorporate, the trademarked term "GOLO," which accordingly manipulate the user's search results in Google.

**ANSWER:**     Defendants deny the allegations contained in paragraph 84 of the Complaint.

85.     As a result of these advertisement purchases and other SEOs, when a user searches Google, Bing, or Yahoo for "GOLO," the Written Review and TV Review, with the corresponding URL addresses, appear on the second page of search results (despite their very recent publication and broadcast).

**ANSWER:**     Defendants deny the allegations contained in paragraph 85 of the Complaint.

86.     On information and belief, Defendants' use of the above-described SEOs has redirected and/or continues to redirect potential and existing GOLO customers to the Dr. Oz website, and to the products, programs, and plans Dr. Oz and Ms. Glassman review more positively, link to, sell, and/or promote, and has resulted in GOLO's loss of substantial revenue and goodwill.

**ANSWER:**     Defendants deny the allegations contained in paragraph 86 of the Complaint.

87.     On information and belief, Defendants receive or have received significant financial benefits from their use of the above-described SEOs, and the resulting redirection of potential and existing GOLO customers to their respective websites, including, but not limited to, additional advertisement revenue generated from or by those users' visits to the Dr. Oz website.

**ANSWER:**     Defendants deny the allegations contained in paragraph 87 of the Complaint.

88.     GOLO incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs of the Complaint as though set forth fully herein.

89.     Defendants' method of using the Dr. Oz website and SEOs in general, and the Written Review in particular, to publish false, misleading, and defamatory statements regarding GOLO, praise the products, programs, and plans Defendants are affiliated with, and/or receive compensation from, and direct readers to those other products, programs, and plans, constitutes unfair competition and/or false advertising.

**ANSWER:**     Defendants deny the allegations contained in paragraph 89 of the Complaint.

90.     Defendants' method of using *The Dr. Oz Show* in general, and the TV Review in particular, to publish false, misleading, and defamatory statements regarding GOLO, praise the products, programs, and plans Defendants are affiliated with, and/or receive compensation from, and direct readers to those other products, programs, and plans, constitutes unfair competition and/or false advertising.

**ANSWER:**     Defendants deny the allegations contained in paragraph 90 of the Complaint.

91.     The Dr. Oz website, *The Dr. Oz Show*, and Dr. Oz and Ms. Glassman's other publications purport to provide unbiased, scientific analyses and reviews of diet and health-related products, but are actually conduits for the promotion of products, programs, and plans Defendants are affiliated with and/or receive compensation from.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 91 regarding Ms. Glassman. Defendants deny the remaining allegations contained in paragraph 91 of the Complaint.

92.     In promoting those other products, programs, and plans, and disparaging GOLO, Defendants are making false and misleading statements about GOLO, including but not limited to the statements alleged herein.

**ANSWER:**     Defendants deny the allegations contained in paragraph 92 of the Complaint.

93.     Defendants' false and misleading statements are material, in that they are likely to influence customers' purchasing decisions.

**ANSWER:**     Defendants deny the allegations contained in paragraph 93 of the Complaint.

94.     Defendants' acts constitute willful, deliberate, false, and misleading representations of fact as to the nature and characteristics of GOLO' s services, in violation of 15 U.S.C. § 1125(a)(l)(B), because the Written Review and TV Review are simply means of promoting the products, programs, and plans Defendants are affiliated with and/or receive compensation from.

**ANSWER:**     Defendants deny the allegations contained in paragraph 94 of the Complaint.

95.     GOLO has been and will continue to be injured as a result of Defendants' false statements, either by direct diversion of sales from itself to the products, programs, and plans Defendants are affiliated with, and/or receive compensation from, the costs to GOLO for corrective advertising to counteract Defendants' misrepresentations and advertising campaign, or by a lessening of the goodwill associated with GOLO's goods and services.

**ANSWER:**     Defendants deny the allegations contained in paragraph 95 of the Complaint.

96.     As a direct and proximate result of Defendants' Unfair Competition and False Advertising, GOLO has suffered and will continue to suffer monetary damages and irreparable harm.

**ANSWER:**     Defendants deny the allegations contained in paragraph 96 of the Complaint.

97.     GOLO is entitled to relief pursuant to 15 U.S.C. § 1125.

**ANSWER:**     Defendants deny the allegations contained in paragraph 97 of the Complaint.

98.     GOLO incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs of the Complaint as though set forth fully herein.

99.     In utilizing the above-described SEOs and promoting the products, programs, and plans Defendants are affiliated with, and/or receive compensation from on the Dr. Oz website and *The Dr. Oz Show*, Defendants appear to be making false and misleading statements about said products, including but not limited to the statements alleged herein.

**ANSWER:**     Defendants deny the allegations contained in paragraph 99 of the Complaint.

100.     Defendants' apparently false and misleading statements are material, in that they are likely to influence customers' purchasing decisions.

**ANSWER:**     Defendants deny the allegations contained in paragraph 100 of the Complaint.

101.     Defendants' acts with respect to the products, programs, and plans they are affiliated with, and/or receive compensation from, also constitute willful, deliberate, false, and misleading representations of fact as to the nature and characteristics of its own goods and/or services, in violation of 15 U.S.C. § 1125(a)(1)(B), because the statements alleged herein are not supported by any studies, data, or facts. Defendants' misleading statements, therefore, constitute false advertising and promotion.

**ANSWER:**     Defendants deny the allegations contained in paragraph 101 of the Complaint.

102.     GOLO has been and will continue to be injured as a result of Defendants' false statements, either by direct diversion of sales from itself to the other products, programs, and

plans Defendants are affiliated with, and/or receive compensation from, or by a lessening of the goodwill associated with GOLO's goods and services.

**ANSWER:**    Defendants deny the allegations contained in paragraph 102 of the Complaint.

103.    As a direct and proximate result of Defendants' Unfair Competition and False Advertising, GOLO has suffered and will continue to suffer monetary damages and irreparable harm.

**ANSWER:**    Defendants deny the allegations contained in paragraph 103 of the Complaint.

104.    GOLO is entitled to relief pursuant to 15 U.S.C. § 1125.

**ANSWER:**    Defendants deny the allegations contained in paragraph 104 of the Complaint.

105.    GOLO incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

**ANSWER:**    Defendants incorporate by reference their responses to the preceding paragraphs of the Complaint as though set forth fully herein.

106.    The above-mentioned statements were paid for and/or published by Defendants on the Dr. Oz website and *The Dr. Oz Show*.

**ANSWER:**    Defendants deny the allegations contained in paragraph 106 of the Complaint.

107.    The above-mentioned statements were false and defamatory.

**ANSWER:**    Defendants deny the allegations contained in paragraph 107 of the Complaint.

108.    At the time Defendants published the above-mentioned statements, they knew that the statements concerning GOLO were totally false or, if not, Defendants' avoidance of the truth was in utter and reckless disregard of their truth or falsity.

**ANSWER:**    Defendants deny the allegations contained in paragraph 108 of the Complaint.

109.     Defendants' false and defamatory statements have severely injured GOLO, in that they have tended to blacken and besmirch GOLO's reputation.

**ANSWER:**     Defendants deny the allegations contained in paragraph 109 of the Complaint.

110.     Each of the aforementioned defamatory statements was understood by third parties to pertain to and defame GOLO.

**ANSWER:**     Defendants deny the allegations contained in paragraph 110 of the Complaint.

111.     Defendants' defamatory publication was so outrageous and malicious as to warrant the imposition of punitive damages.

**ANSWER:**     Defendants deny the allegations contained in paragraph 111 of the Complaint.

112.     As a proximate result of Defendants' malicious, intentional, and reckless conduct as set forth above, GOLO is entitled to such damages as will compensate it for the injury to its professional reputation, as well as punitive damages to punish Defendants for their conduct and deter Defendants and others similarly situated for like acts in the future.

**ANSWER:**     Defendants deny the allegations contained in paragraph 112 of the Complaint.

113.     GOLO incorporates the preceding paragraphs as if fully set forth herein.

**ANSWER:**     Defendants incorporate by reference their responses to the preceding paragraphs of the Complaint as though set forth fully herein.

114.     Defendants are in competition with GOLO for internet traffic and/or website clicks or hits.

**ANSWER:**     Defendants deny the allegations contained in paragraph 114 of the Complaint.

115.     Dr. Oz and Ms. Glassman are also in competition with GOLO in the diet and weight-loss market.

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 115 regarding Ms. Glassman. Defendants deny the remaining allegations contained in paragraph 115 of the Complaint.

116.     Defendants' incorrect and misleading "reviews" concerning the GOLO program, and diversion of organic internet traffic, constitute unfair competition under Pennsylvania common law.

**ANSWER:**     Defendants deny the allegations contained in paragraph 116 of the Complaint.

117.     Defendants' false and/or misleading descriptions of the Dr. Oz website and *The Dr. Oz Show* as informational and authoritative also constitute unfair competition under Pennsylvania common law.

**ANSWER:**     Defendants deny the allegations contained in paragraph 117 of the Complaint.

118.     More specifically, Defendants' false and/or misleading descriptions of the Dr. Oz website and *The Dr. Oz Show*, and misuse of the GOLO name and trademarks in their incorrect and misleading "reviews" of the GOLO program, their online and television advertising, and their other SEOs, amount to:

- false description and/or designation of origin with respect to both GOLO and the Dr. Oz website, The Dr. Oz Show, and "reviews" thereon;

- deceptive marketing to GOLO's commercial detriment;

- an unfair method of competition for internet traffic and/or website clicks or hits; and/or

- with respect to Dr. Oz and Ms. Glassman, an unfair method of competition for diet and weight loss products and programs.

**ANSWER:**     Defendants deny the allegations contained in paragraph 118 of the Complaint.

119.    GOLO has more than a reasonable basis to believe that, as a direct and proximate result of Defendants' unfair competition, GOLO has been injured.

**ANSWER:**    Defendants deny the allegations contained in paragraph 119 of the Complaint.

## AFFIRMATIVE DEFENSES

By alleging the Affirmative Defenses below, Defendants do not intend to alter the burden of proof and/or evidentiary burden which otherwise exists concerning any particular issues at law or in equity.  All such defenses are pled in the alternative, and do not constitute an admission of liability or that Plaintiff is entitled to any relief.

### FIRST DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants neither knew that any publications they made were false, nor acted in reckless disregard of the truth or falsity of any publications that is in fact entertained serious doubt about the truth of their statements.

### THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants did not engage in any willful misconduct.

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants acted at all times in good faith.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by its failure to mitigate, or reasonably attempt to mitigate, its alleged damages.

### SIXTH DEFENSE

Plaintiff's claims are barred because, should any allegations of unlawful conduct contained in the Complaint be found to have merit (which Defendants deny), Defendants affirm that they took prompt and effective action to remedy any such acts and therefore have no liability for them.

### SEVENTH DEFENSE

If Plaintiff suffered any damages, which Defendants dispute, such damages were proximately or legally caused by the misconduct, neglect, and fault of Plaintiff and/or parties other than Defendants.

### EIGHTH DEFENSE

Plaintiff's claim for punitive damages is barred because Defendants did not engage in any malicious or reckless conduct that would warrant imposition of such damages.

### NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the conduct about which Plaintiff complains was undertaken for a legitimate business purpose.

### TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing to advance such claims.

### ELEVENTH DEFENSE

An award of punitive or exemplary damages on the facts of this case would be unconstitutional. Any recovery of punitive or exemplary damages by the Plaintiff in this civil lawsuit would constitute the imposition of a criminal fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States

Constitution.  Any such award of punitive or exemplary damages in this case would amount to nothing less than a denial to Defendants of due process and equal protection of the laws as are guaranteed under the United States Constitution.  Furthermore, if an award of punitive or exemplary damages on the facts of this case is not held to be unconstitutional, such damages may not be awarded without proof that the statutory requirements for such damages have been satisfied.  Additionally, punitive or exemplary damages on the facts of this case may not be awarded without proof that such damages may be awarded as recognized by the United States, and Commonwealth of Pennsylvania Supreme Courts.

## TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because any statements or publications that Defendants may have allegedly made concerning Plaintiff constitute statements of opinion and are therefore not actionable.

## THIRTEENTH DEFENSE

Plaintiff has the burden of proving material falsity in the context of the complained of statements in this case but, in the event Plaintiff is not under an obligation to prove material falsity, Plaintiff's claims are barred, in whole or in part, by the affirmative defense of truth or substantial truth considering the publication as a whole.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations.

## FIFTEENTH DEFENSE

Defendants allege that Plaintiff's claims are barred because the complained of statements on which Plaintiff's claims are based were on a topic of public concern and controversy, and, therefore, are privileged under the First and Fourteenth Amendments of the United States

Constitution and Article I, § 7 of Pennsylvania Constitution and the common law of Pennsylvania.

## SIXTEENTH DEFENSE

Defendants allege that the complained of statements constituted fair and impartial reports and comments on public and newsworthy proceedings and controversies of public interest and public concern and are accordingly protected by privilege including, but not limited to, the "Fair Report Privilege", the "Neutral Report Privilege", the First Amendment to the United States Constitution, and the Free Speech Clause, Article I, § 7 of the Pennsylvania Constitution and the common law.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because the complained of statements are puffery.

## ATTORNEYS' FEES

Plaintiff's actions make this an exceptional case under the Lanham Act and, therefore, Defendants are entitled to their attorneys' fees under the Lanham Act and any other applicable law.

## RESERVATION OF RIGHTS

Defendants reserve the right to assert such additional defenses that may appear and prove applicable through the course of this litigation.

**WHEREFORE**, Defendants ZoCo Productions, LLC, Harpo Productions, Inc., and Mehmet Oz, M.D. respectfully request that the Court:

(a)     dismiss the Complaint in its entirety, with prejudice;

(b)     award Defendants their costs in this action;

(c)     award Defendants their reasonable attorneys' fees; and

(d)     grant to Defendants such other and further relief as the Court deems appropriate.

Dated: August 22, 2014

By: */s/ Dennis R. Suplee*
    Dennis R. Suplee
    Pa. ID No. 03336
    Samuel W. Silver
    Pa. ID No. 56596
    Rachel A. Horton
    Pa. ID No. 316482
    SCHNADER HARRISON SEGAL & LEWIS LLP
    1600 Market Street, Suite 3600
    Philadelphia, PA  19103

    Charles L. "Chip" Babcock
    (Pro Hac Vice Pending)
    Texas Bar No. 01479500
    Carl C. Butzer
    (Pro Hac Vice Pending)
    Texas Bar No. 03545900
    Jamila M. Brinson
    (Pro Hac Vice Pending)
    Texas Bar No. 24074867
    William A. I. McDonald, III
    (Pro Hac Vice Pending)
    Texas Bar No. 2589983
    JACKSON WALKER, L.L.P.
    1401 McKinney Avenue, Suite 1900
    Houston, Texas 77010
    (713) 752-4200
    (713) 752-4221 – Fax
    cbabcock@jw.com
    cbutzer@jw.com
    jbrinson@jw.com
    wmcdonald@jw.com

    **ATTORNEYS FOR DEFENDANTS ZOCO PRODUCTIONS, LLC, HARPO PRODUCTIONS, INC., AND MEHMET OZ, M.D.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August 2017, a true and correct copy of the foregoing document was filed with the Clerk of the Court and is available for viewing and downloading from the ECF system by all counsel of record.

*/s/ Dennis R. Suplee*
Dennis R. Suplee